**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

MARK PAUL WELLER,

              Defendant.

No. CR 14-4059-1-MWB

**MEMORANDUM OPINION AND ORDER REGARDING CALCULATION OF CRIMINAL HISTORY**

---

**TABLE OF CONTENTS**

I.     **INTRODUCTION**.................................................................. 2
    *A.*    *Factual Background* ................................................. 2
    *B.*    *Procedural Background* ............................................ 4
    *C.*    *Arguments Of The Parties* ........................................ 7

II.    *LEGAL ANALYSIS* ....................................................... 9
    *A.*    *Standards For Interpretation Of Sentencing Guidelines* ............. 9
    *B.*    *The Applicable Guideline* ........................................ 10
        *1.*    *Text of the guideline* ...................................... 10
        *2.*    *Tests for "similarity"* .................................... 12
        *3.*    *Applications of the guideline* ............................. 14
    *C.*    *Interpretation Of The Guideline* ................................. 21
    *D.*    *Application Of The Guideline* .................................... 22
    *E.*    *Alternative Reasons For Rejecting The Calculation* ............... 27

III.    *CONCLUSION* ............................................................ 28

In this case, the defendant pleaded guilty to one count of conspiracy to distribute methamphetamine and one count of distributing methamphetamine. Prior to sentencing, he challenged the scoring of one criminal history point for his prior conviction for contributing to the delinquency of a minor, pursuant to U.S.S.G. § 4A1.2(c). The defendant contends that "counting" this prior conviction improperly changes his criminal history category from I to II and increases his advisory sentencing guidelines range from 135 to 168 months to 151 to 188 months. I now enter this memorandum opinion and order regarding the calculation of the defendant's criminal history.

## I. INTRODUCTION

### A. Factual Background

According to the final PSIR (docket no. 73), defendant Mark Paul Weller came to the attention of law enforcement officers on April 24, 2014, when they responded to a 911 emergency call at co-defendant Christopher Julin's residence. The 911 call had been made by Julin's six-year-old child, who claimed that his father would not wake up. When officers arrived at Julin's residence, they found him asleep and woke him up, but they also found methamphetamine. Julin told law enforcement officers that Weller was his primary drug source at that time. PSIR, ¶ 4.

Thereafter, on May 7, 2014, law enforcement officers conducted a controlled drug buy from Weller in rural Schleswig, Iowa, during which Weller offered to sell an undercover agent four ounces (113.4 grams) of methamphetamine for $4,000, but the undercover agent actually purchased two ounces (55.89 grams) for $2,000. Testing showed the methamphetamine to be 99.6% pure, resulting in 112.94 grams offered by

Weller. *Id*. at ¶ 5. Further investigation showed that Weller made additional sales of methamphetamine and traded methamphetamine with Julin for an SKS rifle. Weller was arrested on June 9, 2014, after a traffic stop of a vehicle that he was driving during which methamphetamine was found on a passenger in the vehicle, Weller's sister, and the SKS rifle was found on the front seat area between Weller and another passenger. *See id*. at ¶¶ 6-13. The PSIR attributed 336.44 grams of actual (pure) methamphetamine and 2.0554 kg of methamphetamine mixture to Weller, resulting in a marijuana equivalency of 10,839.56 kg. *Id*. at ¶ 19.

The PSIR reflects that Weller had only two prior arrests leading to criminal convictions. Weller was arrested in Crawford County, Iowa, on September 15, 2005, when he was 18 years old, which led to his conviction for operating a vehicle while intoxicated. Weller was sentenced on that conviction, on December 12, 2005, to 30 days in jail, with all but 28 days suspended, one year of probation, and a fine. PSIR at ¶ 30. Weller's probation on that offense was extended to December 12, 2007, by an Order filed on December 11, 2006, but Weller was actually discharged from probation on October 3, 2007. *Id*.

Weller's second arrest leading to a conviction was on May 11, 2006, when he was 19 years old, in Woodbury County, Iowa. That arrest led to his conviction of an open container offense and contributing to the delinquency of a minor. *Id*. at ¶ 31. The PSIR describes the conduct leading to this arrest as follows:

> The Complaint reflects that, at 3:49 a.m., officers stopped a vehicle for driving down the wrong way of a street. Three occupants were inside the vehicle, including two juveniles of whom one was the driver[,] and the defendant, who was sitting in the back seat. The defendant contributed to the juveniles violating the curfew law (Count 2). In the rear of the vehicle under the defendant's seat, an officer located an

> open can of beer that had been dumped onto the floorboard of
> the car (Count 1).

PSIR at ¶ 31. Weller contends that this incident happened early in the morning of the day after his high school graduation. Defendant's Sentencing Memorandum And Brief In Support Of Motion For Downward Variance (docket no. 76), 7. The criminal Complaint & Affidavit, *id.*, Exhibit C (docket no. 76-3), filed May 11, 2006, in the Iowa District Court For Woodbury County, specifically charges that Weller "did contribute or knowingly encourage, contribute, or in any manner cause a minor to violate any law of this state or any ordinance of an[y] city" and explains that "the defendant was with two juveniles that were out past there [sic] curfew." On May 11, 2006, Weller was given a $50 fine for the open container offense and a $50 fine for the contributing to the delinquency of a minor offense. PSIR at ¶ 31.

### B.    Procedural Background

Weller was originally charged as the sole defendant in a two-count Indictment (docket no. 2), handed down July 24, 2014, charging him with methamphetamine offenses. Approximately a month later, on August 27, 2014, a grand jury handed down a Superseding Indictment (docket no. 7) against both Weller and Julin. Weller and Julin were both charged, in **Count 1**, with conspiracy, from about 2013 and continuing to about July 2014, to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 50 grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Weller was also charged, in **Count 2**, with distributing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 5 grams or more of actual (pure) methamphetamine, on or about May 7, 2014, in violation of U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Weller initially pleaded not guilty to both of

the charges against him on September 4, 2014, *see* Arraignment Minutes (docket no. 25), and a jury trial was set for November 3, 2014. *See* Order Setting Jury Trial In Criminal Case (docket no. 28).

After various continuances of the trial date, however, Weller entered a guilty plea before United States Magistrate Judge Leonard T. Strand to both counts against him, without a plea agreement, on December 17, 2014. *See* Plea Hearing Minutes (docket no. 51); Report And Recommendation Concerning Guilty Plea (docket no. 52). I accepted Judge Strand's recommendation to accept Weller's guilty plea by Order (docket no. 55), filed that same day. Weller's sentencing hearing was originally set for April 23, 2015, *see* Order (docket no. 71), but was ultimately reset for May 5, 2015. *See* Order (docket no. 78).[1]

In a Draft PSIR (docket no. 70), the probation officer scored 1 criminal history point for Weller's conviction for contributing to the delinquency of a minor (and the open container offense). *See* Draft PSIR at ¶ 30. The probation officer determined that, with one other criminal history point for Weller's prior conviction for operating a vehicle while intoxicated, Weller's criminal history category was II, *see id.* at ¶ 33, and that, with other calculations, this resulted in an advisory sentencing guidelines range of 151 to 188 months of imprisonment. *Id.* at 65. Weller objected on the ground that the conviction for contributing to the delinquency of a minor was not "scoreable" under U.S.S.G. § 4A1.2(c). *See* Objection To Draft PSIR (docket no. 72).

---

[1] On January 21, 2015, Weller's co-defendant, Christopher Julin, pleaded guilty before Judge Strand to the single methamphetamine conspiracy charge against him, *see* Plea Hearing Minutes (docket no. 63), Judge Strand recommended that I accept Julin's guilty plea, *see* Report And Recommendation (docket no. 64), and I accepted Judge Strand's recommendation. *See* Order (docket no. 67). Julin's sentencing hearing is set for May 19, 2015. *See* Order (docket no. 77).

In the final PSIR (docket no. 73), the probation officer agreed that the open container conviction was not "scoreable," but concluded that the conviction for contributing to the delinquency of a minor was "scoreable." *Id*. at ¶ 31 (Probation Officer's Response). The probation officer pointed out that IOWA CODE § 709A.1 identifies several ways in which the offense of contributing to the delinquency of a minor can be committed, but that "[i]t does not appear the sentencing order specified which subsection of 709A the defendant pled guilty to." *Id*. The probation officer then concluded,

> It is the probation office's recommendation that the offense of Contributing to the Delinquency of a Minor should be scored because it does not share any common elements (encouraging minors to violate the law) with any of the listed offenses enumerated under 4A1.2(c)(1). The scoring of this offense was not changed, although the presentence report was amended to include a description of the offense.

PSIR at ¶ 31. The probation officer acknowledged, however, that, "if the Court agrees with the defendant, the Criminal History Category would be I, which would establish an advisory guideline range of 135 to 168 months." *Id*.[2]

On April 15, 2015, Weller filed a Sentencing Memorandum And Brief In Support Of Motion For Downward Variance (Sentencing Memorandum) (docket no. 76). In his Sentencing Memorandum, Weller, *inter alia*, reiterated his prior objection to "scoring" a criminal history point for his prior conviction for contributing to the delinquency of a

---

[2] Had Weller been eligible for the "safety valve" pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, but for counting his prior offense for contributing to the delinquency of a minor in his criminal history, the difference in his sentence resulting from "counting" his prior conviction likely would have been even more dramatic.

minor, pursuant to U.S.S.G. § 4A1.2(c). It is this challenge to his criminal history calculation that I will address in this opinion.[3] On April 21, 2015, the prosecution filed a Response To Defendant's Sentencing Memorandum And Motion For Downward Variance (docket no. 80).

I held Weller's sentencing hearing on May 5, 2015, and I now enter this written ruling concerning Weller's challenge to the criminal history calculation in the PSIR.

### C.      Arguments Of The Parties

In his Sentencing Memorandum, Weller argues that contributing to the delinquency of a minor is similar to several offenses listed under USSG § 4A1.2(c)(1) and (2), and, thus, his conviction for this offense is not "scoreable." Weller urges me to follow Senior Judge Donald E. O'Brien's reasoning in *United States v. Leon-Alvarez*, No. CR05-4126-DEO, 2008 WL 5429724 (N.D. Iowa Dec. 31, 2008), addressing a similar question. He admits that contributing to the delinquency of a minor, as defined in IOWA CODE § 709A.1, is not listed in either § 4A1.2(c)(1) or § 4A1.2(c)(2). Thus, he argues, I must determine whether that offense is similar to any of the listed offenses, using the "common sense approach," involving consideration of several factors, that is now mandated in Application Note 12. He points out that, in *Leon-Alvarez*, Judge O'Brien acknowledged that contributing to the delinquency of a minor is not the same "element-for-element" as any listed offense in either subsection of § 4A1.2(c), but that,

---

[3] On April 15, 2015, Weller also filed a Motion For Downward Variance (docket no. 75), which was before me at his sentencing hearing. In that Motion, Weller sought a downward variance from his advisory sentencing guidelines range on the ground that the Sentencing Guidelines concerning methamphetamine offenses are still too harsh, as I found in *United States v. Hayes*, 948 F. Supp. 2d 1009 (N.D. Iowa 2013), even after the two-level reduction in the 2014 Sentencing Guidelines. I addressed that contention on the record in the course of Weller's sentencing hearing.

using the "common sense approach," it was not an offense serious enough to warrant increased punishment for a subsequent offense. Using this approach, he argues, Senior Judge O'Brien found that contributing to the delinquency of a minor was similar to offenses in *both* subsections of § 4A1.2(c).

Weller argues that his prior conviction for contributing to the delinquency of a minor is also a simple misdemeanor that was punishable by a maximum of 30 days in jail or a $500 fine. Thus, he argues that this offense carries less serious punishments than can be imposed for several of the "listed" offenses in § 4A1.2(c). He points out that his actual punishment was even less severe, consisting of only a $50 fine, and that the "delinquent" behavior to which he contributed was the petty offense of minors being out past curfew. He also argues that this offense says little about the likelihood of recurring criminal conduct and has nothing to do with the methamphetamine-dealing conduct for which he faces a mandatory minimum sentence of 10 years.

Weller reiterated these arguments at his sentencing hearing. Also, in response to my questions, defense counsel suggested that it might be within my discretion to disagree with the applicable guideline on policy grounds, and that it would be within my discretion to depart or vary from the advisory sentencing guidelines range on the basis of over-representation of his criminal history.

In its Response, the prosecution admits that the scoring of Weller's criminal history "presents a close question." Response at 2. Nevertheless, the prosecution concurs with the probation officer's analysis, in the PSIR, in response to Weller's objection. The prosecution also contends that the limited circuit-based case law on the issue does not support Weller's argument. In particular, the prosecution points out that the elements of contributing to the delinquency of a minor are not really like nor do they share enough similarities to those of any of the listed offenses in § 4A1.2(c). The prosecution admits that the actual facts of Weller's conviction for contributing to the

delinquency of a minor do not present a compelling reason to count the conviction in Weller's criminal history calculation. Nevertheless, the prosecution argues, if this conviction is "counted," I can consider the underlying facts of the offense in an alternative manner, such as finding over-representation of criminal history or granting a variance, to achieve a reasonable sentence.

The prosecution also reiterated its written arguments at Weller's sentencing hearing, including its position that over-representation of criminal history might be a more appropriate way to address the pettiness of the prior conviction. The prosecution did opine that Weller was entitled to some relief in this case.

## II.    LEGAL ANALYSIS

### A.    Standards For Interpretation Of Sentencing Guidelines

As the Eighth Circuit Court of Appeals has explained, "'The Guidelines reflect the will of Congress and a Congressional desire for uniform and fair sentencing.'" *United States v. Armstrong*, ___ F.3d ___, ___, 2015 WL 1600474, *6 (8th Cir. April 10, 2015) (quoting *United States v. Townsend*, 408 F.3d 1020, 1023 (8th Cir. 2005)). Consequently, courts "'employ basic rules of statutory construction when interpreting the Guidelines.'" *Id*. More specifically,

> "We begin our review by examining the plain language of the Guidelines, 'and where that is unambiguous we need look no further.'" *United States v. Salem*, 587 F.3d 868, 870 (8th Cir.2009) (quoting *United States v. Abumayyaleh*, 530 F.3d 641, 650 (8th Cir.2008)). In doing so, we must keep in mind that "[i]t is 'a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a [guideline].'" *United States v. Johnson*, 703 F.3d 464, 468 (8th Cir.2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

*United States v. Collins*, 754 F.3d 626, 630-31 (8th Cir. 2014).  Also, courts often look to dictionaries to determine the ordinary meaning of words in the Guidelines.  *Armstrong*, ___ F.3d at ___, 2015 WL 1600474 at *6.  The situation is different, if the guideline is ambiguous:

> If "an ambiguous section of the Sentencing Guidelines may be given either of two plausible readings," we must resolve the ambiguity in the defendant's favor. *United States v. Rodriguez–Arreola*, 313 F.3d 1064, 1067 (8th Cir.2002). This "canon of strict construction" has constitutional underpinnings in both the accused's Fifth Amendment right to due process and the legislative branch's exclusive Article I "power to define crimes and their punishment." *United States v. Lanier*, 520 U.S. 259, 265 & n. 5, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "It is founded on the tenderness of the law for the rights of individuals," and "is perhaps not much less old than construction itself." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820) (Marshall, C.J.).

*United States v. Parker*, 762 F.3d 801, 806-07 (8th Cir. 2014).

The Eighth Circuit Court of Appeals reviews a district court's interpretation and application of the sentencing guidelines *de novo*.  *See, e.g., United States v. Sacus*, ___ F.3d ___, ___, 2015 WL 1934468, *4 (8th Cir. April 30, 2015).

### B.      The Applicable Guideline

#### 1.      Text of the guideline

The Sentencing Guideline at the center of Weller's challenge is U.S.S.G. § 4A1.2(c), which provides, as follows:

**(c)** **<u>Sentences Counted and Excluded</u>**

Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:

(1)     Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

Careless or reckless driving

Contempt of court

Disorderly conduct or disturbing the peace

Driving without a license or with a revoked or suspended license

False information to a police officer

Gambling

Hindering or failure to obey a police officer

Insufficient funds check

Leaving the scene of an accident

Non-support

Prostitution

Resisting arrest

Trespassing.

(2)     Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

> Fish and game violations
>
> Hitchhiking
>
> Juvenile status offenses and truancy
>
> Local ordinance violations (except those violations that are also violations under state criminal law)
>
> Loitering
>
> Minor traffic infractions (e.g., speeding)
>
> Public intoxication
>
> Vagrancy.

U.S.S.G. § 4A1.2(c); *see also United States v. Ruacho*, 746 F.3d 850, 853 (8th Cir. 2014) (describing this provision).

### 2.    *Tests for "similarity"*

Prior to an amendment of the pertinent guideline in 2007, the Eighth Circuit Court of Appeals "adopted an 'elements' or 'essential characteristics' test to determine whether two crimes were 'similar' for purposes of section 4A1.2(c)." *United States v. Barrientos*, 670 F.3d 870, 871 (8th Cir. 2012) (citing *United States v. Borer*, 412 F.3d 987, 992 (8th Cir. 2005)).  However,

> Effective November 1, 2007, the Sentencing Commission "resolve[d] [the] circuit conflict over the manner in which a court should determine whether a non-listed offense is 'similar to' an offense listed at § 4A1.2(c)(1) or (2)." USSG App. C, Amend. 709. In passing Amendment 709, the Commission adopted the Fifth Circuit's multi-factor, "common sense" approach from *[United States v.] Hardeman*, [933 F.2d 278, 281 (5th Cir. 1991)].

*Barrientos*, 670 F.3d at 871-72.  More specifically, Application Note 12 explains,

12. *Application of Subsection (c)*.—

    (A)    *In General*.--In determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

    (B)    *Local Ordinance Violations*.-- A number of local jurisdictions have enacted ordinances covering certain offenses (e.g., larceny and assault misdemeanors) that are also violations of state criminal law. This enables a local court (e.g., a municipal court) to exercise jurisdiction over such offenses. Such offenses are excluded from the definition of local ordinance violations in § A1.2(c)(2) and, therefore, sentences for such offenses are to be treated as if the defendant had been convicted under state law.

    (C)    *Insufficient Funds Check*.-- "Insufficient funds check," as used in § 4A1.2(c)(1), does not include any conviction establishing that the defendant used a false name or non-existent account.

U.S.S.G. § 4A1.2, Application Note 12.  The Eighth Circuit Court of Appeals "ha[s] expressly adopted the test from Amendment 709, eschewing our previous '"elements" or

"essential characteristics" test.'" *Ruacho*, 746 F.3d at 854 (quoting *Barrientos*, 670 F.3d 870, 871 (8th Cir. 2012), with internal citations omitted)).

### 3.  *Applications of the guideline*

The Eighth Circuit Court of Appeals has actually applied § 4A1.2(c) only a few times since Amendment 709 changed the applicable test.[4]  Although the court concluded, in *United States v. Barrientos*, 670 F.3d 870 (8th Cir. 2012), that the proper test of "similarity" under § 4A1.2(c) is the test adopted by the Sentencing Commission in Amendment 709, the court did not, in fact, apply that test in that case.  670 F.3d at 871-72.  Rather, the court concluded that the district court had mistakenly relied on a holding in one of its prior decisions, applying the "elements" test, that liquor consumption by persons under 21 was entitled to a criminal history point.  *Id*. at 873.  The court found that "[a]bsent from the district court's determination . . . was any discussion of, or reference to, the factors now listed under the commentary to section 4A1.2."  *Id*. at 873.  That failing required the appellate court to reverse the district court's sentence and to

---

[4] The Eighth Circuit Court of Appeals concluded that it was not required to apply the test in Amendment 709 and Application Note 12 for various reasons in some decisions after Amendment 709 became effective.  *See United States v. Simms*, 695 F.3d 863, 866 (8th Cir. 2012) (concluding that it not consider the merits of the question of whether a conviction for petty larceny should be counted under § 4A1.2(c), because the sentencing court stated that, even if the offense was not counted, he would have imposed the same sentence); *United States v. Pando*, 545 F.3d 682, 684 (8th Cir. 2008) (concluding that it need not determine that Amendment 709 was retroactively applicable to the prior conviction for "driving while ability impaired" (DWAI) under Colorado law at issue, "because the district court's scoring of a criminal history point for Pando's DWAI conviction was proper under Application Note 5 to section 4A1.2, in effect at the time of Pando's underlying crimes"); *United States v. Johnston*, 533 F.3d 972, 978 (8th Cir. 2008) (finding it unnecessary to reach the issue of whether the defendant's convictions for underage possession of alcohol should be counted under § 4A1.2(c)(2), because the error would have been "harmless in any event," because of the applicable mandatory minimum sentence).

remand for resentencing. *Id.* Thus, the *Barrientos* decision provides no insight on how the factors in the proper test under § 4A1.2(c) are to be applied.

In the subsequent decision of the Eighth Circuit Court of Appeals in *Ruacho*, the court did actually apply the multi-factor test to determine whether convictions for possession of a small amount of marijuana and possession of marijuana in a motor vehicle, under Minnesota law, should be counted under § 4A1.2(c). *Ruacho*, 746 F.3d at 853-56. As to comparison of possession of a small amount of marijuana to the listed offenses of public intoxication and disorderly conduct, the court explained:

> The government concedes that the first two factors— punishment comparison and seriousness of the offense— weigh in favor of Ruacho. Public intoxication is not a crime in Minnesota. Minn.Stat. § 340A.902. Disorderly conduct is a misdemeanor, so it is actually punished more heavily than a petty misdemeanor like possession of a small amount of marijuana. *See* Minn.Stat. § 609.72; Minn.Stat. § 609.02, subd. 3.

> However, the elements of these crimes are completely different. Marijuana possession entails (1) a person who unlawfully possesses a small amount of marijuana. Minn.Stat. § 152.027, subd. 4(a). The elements of disorderly conduct are (1) engaging in brawling or fighting, disturbing a lawful assembly or meeting, or engaging in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language; (2) tending reasonably to arouse alarm, anger, or resentment in others; (3) in a public or private place; (4) knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace. Minn.Stat. § 609.72, subd. 1. Predictably, these crimes are found in separate chapters of the Minnesota Statutes because they involve completely different actions. No elements are the same. Ruacho contends that marijuana possession risks

disturbing the peace, so the two crimes are sufficiently
similar. However, virtually every law is designed to prevent
disturbances of the peace to some extent. Ruacho's argument
would envelop too many offenses. Thus, this factor weighs in
favor of the government.

*Ruacho*, 746 F.3d at 854-55 (footnote omitted).

The court found that one of its prior decisions, *United States v. Foote*, 705 F.3d
305 (8th Cir. 2013), had "already decided the culpability and recidivism factors."
*Ruacho*, 746 F.3d at 855.  The court explained,

The *Foote* court noted that "[d]rug possession 'suggests a
more calculating, a more resourceful, and a more dangerous
criminal' than someone who commits a minor traffic
infraction." *Foote*, 705 F.3d at 308 (quoting *United States v.
Roy*, 126 F.3d 953, 955 (7th Cir.1997)). The same
observation applies here. Finally, the *Foote* court determined
that convictions involving illegal narcotics correlate strongly
to recidivism. *Foote*, 705 F.3d at 308. Although Ruacho
argues that many teenagers experiment with small amounts of
marijuana, we have already determined that this factor favors
the government in narcotics cases.

*Ruacho*, 746 F.3d at 855.  Based on its analysis under Amendment 709, the court
concluded that the defendant had "failed to demonstrate that possession of a small amount
of marijuana is sufficiently similar to public intoxication, disorderly conduct, or any other
enumerated offense," and that no other federal appellate court had held that a prior
conviction for such an offense was not countable.  *Id*.  Thus, the defendant in that case
was properly awarded a criminal history point for his petty misdemeanor violation for
possession of a small amount of methamphetamine.  *Id*.

In *Ruacho*, the court performed essentially the same analysis, and reached
essentially the same conclusions, as to each of the factors when it considered whether a
prior conviction for possession of marijuana in a motor vehicle should "count" in the

defendant's criminal history. *Id*. at 855-56. As to the third "elements" factor, however, the court concluded that, while there was an "overlap" in the operation of a motor vehicle element of the prior conviction and the listed reckless or careless driving offenses, that "overlap" was not enough to weigh in favor of not counting the prior conviction. *Id*. at 856. This was so, because the prior conviction was listed in a different chapter of the Minnesota criminal statutes, and such limited commonality would preclude counting criminal history points for several driving-related offenses like driving under the influence of alcohol. *Id*. (citing *United States v. Perez de Dios*, 2737 F.3d 1192, 1199 (10th Cir. 2001) (concluding that "superficial similarity" may be overshadowed by "significant differences").

I have found nothing in post-amendment decisions of the Eighth Circuit Court of Appeals or other federal circuit courts of appeals suggesting that any one of the five factors is determinative by itself. Rather, in *Ruacho*, the court specifically referred to the test under Amendment 709 and Application Note 12 as a "multi-factor balancing test." *Ruacho*, 746 F.3d at 853. The court in *Ruacho* certainly considered the lack of any overlap in elements between possession of a small amount of marijuana and the listed offenses of public intoxication and disorderly conduct to be important. It also considered that only slight overlap in elements between possession of marijuana in a motor vehicle and reckless or careless driving was not enough to establish the required similarity. Even so, the court's analysis did not simply end with those determinations. *Id*. at 854-55, 856. Also, the Eleventh Circuit Court of Appeals has recognized that "the five-factor test under section 4A1.2(c) requires that we consider the *underlying facts* of [the defendant's prior] conviction," *United States v. Garcia-Sandobal*, 703 F.3d 1278, 1284 (8th Cir. 2013) (emphasis added), so that a "categorical" analysis of the underlying offense is not enough.

I have not found, and the parties have not cited, any decision of the federal circuit courts of appeals *after* Amendment 709 became effective that considered whether or not a prior conviction for contributing to the delinquency of a minor should be "counted" under § 4A1.2(c). *But see United States v. Leon-Alvarez*, 532 F.3d 815 (8th Cir. 2008) (remanding, because the district court's refusal to count a 1993 conviction for contributing to the delinquency of a minor was reversible error, where the district court had considered § 4A1.2(c) "advisory," allowing him to reject counting the offense because it was "akin" to listed offenses, without conducting the *mandatory* guidelines calculation of the defendant's criminal history category); *United States v. Overholt*, 307 F.3d 1231, 1252-53 (10th Cir. 2002) (pre-amendment case, cited by the prosecution, here, reviewing for plain error assessing one criminal history point for contributing to the delinquency of a minor, where the defendant did not object at sentencing, and considering only whether that prior offense was "plainly similar" to a listed offense). One district court decision addressing the matter did so only cursorily. *See United States v. Watson*, No. 2:09cv195, 2009 WL 3233468, * (E.D. Va. Oct. 7, 2009) (§ 2255 decision finding no ineffective assistance of counsel in failing to challenge a criminal history point for contributing to the delinquency of a minor, because counsel's objection would have made no difference, where the district court reasonably could have and would have found the criminal history point applied with no analysis of how the multi-factor test would lead to this conclusion). On the other hand, a decision by Senior Judge O'Brien in our district, in *United States v. Leon-Alvarez*, No. CR05-4126-DEO, 2008 WL 5429724 (N.D. Iowa Dec. 31, 2008), did provide a more thorough application of the multi-factor analysis mandated by Amendment 709 and Application Note 12.

In *Leon-Alvarez*, Senior Judge O'Brien's multi-factor analysis was as follows:

> As for the perceived seriousness of the unlisted offense, Leon faced up to 30 days imprisonment, but was sentenced to only five hours jail. This suggests a level of

seriousness lower than the generic state crime of contributing to delinquency. As reflected in the arrest report recorded shortly after Leon's 1993 arrest (*see* Government's Ex. 2 at 2, Docket No. 45 at 2 (filed under seal)), Leon committed the offense by keeping a minor girl, who appeared intoxicated, out past curfew. Given the lenient sentence imposed and the petty nature of the offense, this factor weighs heavily in favor of finding the unlisted offense is similar to those listed in § 4A1.2 (c)(1).

Turning to the elements of the offense, Section 233.1 of the Iowa Code—the state statute addressing the offense of contributing to delinquency—should be considered. Leon was charged with violating subsection 3 of section 233.1, which makes it a simple misdemeanor "[t]o knowingly encourage, contribute, or in any manner cause such child to violate any law of this state or ordinance of any city." Iowa Code § 233.2(3). The complaint and affidavit charging Leon with contributing to delinquency alleges "Defendant on or about the 17th day of December, 1993 … did contribute or knowingly encourage, contribute, or in any manner cause a minor to violate any law of this state or any ordinance of this city." Government's Ex. No. 2 at 2.12 Neither Iowa Code section 233.1(3), nor the other code sections under which Leon was charged in 1993, appear to precisely correspond, element-for-element, to any of the offenses listed under § 4A1.2 (c)(1). *But cf. United States v. Reyes-Maya*, 305 F.3d 362, 367 (5th Cir.2002) (concluding that the elements of a prior and listed offense need not be identical for the offense to be similar). Still, this factor is not dispositive of non-similarity, and in any event does not, in this Court's estimation, preclude the overall conclusion that the factors enumerated by Amendment 709, "taken as a whole, indicate that the offense is, like the listed offenses, neither particularly serious nor likely to indicate recurring criminal conduct." *[United States v.] Hardeman*, 933 F.2d [278,] 282 [(5th Cir.1991)]. Indeed, as explained below, Amendment 709

confirms that the question of "similarity" under § 4A1.2 (c) is a common-sense determination aimed at excluding offenses that, although not listed as excludable, are not serious enough to warrant increased punishment for a subsequent offense.

Finally, turning to the third and fourth factors—level of culpability involved and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct—the Court again notes the minor nature of Leon's prior offense, as reflected in the sentence of five hours jail and fine of $40 he received. This extremely light sentence suggests a low level of culpability and low predictive capacity for future criminality. More importantly, contributing to delinquency denotes a level of blameworthiness analogous to that of the offenses listed in § 4A1.2(c)(1). *See* Supplement to App. C, Amendment 709 at 239 (noting that Amendment 709 "responds to concerns that … some misdemeanors and petty offenses counted under the guidelines involve conduct that is not serious enough to warrant increased punishment upon sentencing for a subsequent offense."). This Court is persuaded that Leon's 1993 offense is precisely the type of minor offense the Commission had in mind when it amended § 4A1.2(c) (*id.*), especially given the fact that inclusion of his offense in calculating his criminal history would, by itself, disqualify Leon from safety valve eligibility. *Id*. (noting that Amendment 709 also "responds to concerns that … the presence of a misdemeanor or petty offense in a rare case can affect the sentence in the instant offense in a way that is greatly disproportionate to the seriousness of the prior offense (such as when such a prior offense alone disqualifies a defendant from safety valve eligibility)."). For Leon, a finding by this Court that the 1993 conviction must be counted would mean 23 additional months of prison-nearly two years of additional prison time for a conviction originally punished by five hours imprisonment and a $40 fine.

*Leon-Alvarez*, 2008 WL 5429724 at \*5-\*6 (footnotes omitted). For these reasons, Judge O'Brien declined to "count" the defendant's prior conviction for contributing to the delinquency of a minor in that defendant's criminal history calculation. *Id.* at \*6.

### C. Interpretation Of The Guideline

My task begins with interpretation of § 4A1.2(c), and, more specifically, with an examination of the plain language of the guideline. *Collins*, 754 F.3d at 630-31. I note that the guideline states that it applies to "the following prior offenses and offenses similar to them." U.S.S.G. § 4A1.1(c)(1) and (2). Because this language refers to "offenses similar to *them*," *i.e.*, similar to listed *offenses*, not merely similar to *a listed offense*, this language is, at best, ambiguous as to whether it requires a comparison of a prior offense to *a single specific listed offense*, or to the *listed offenses as a group*. Because I conclude that either reading is plausible, I must apply the rule of lenity and resolve the resulting ambiguity in the defendant's favor. *Parker*, 762 F.3d at 806-07. Such lenity, here, would place more emphasis on the comparison of the *character* of the prior offense and the *character* of the listed offenses *as a group*, and less emphasis on any comparison of the prior offense with a *specific* listed offense. Indeed, this conclusion is consistent with the multi-factor test in Amendment 709 and Application Note 12, which plainly de-emphasized an offense-to-offense comparison and similarity of elements of the prior offense with the elements of a single listed offense by making "the elements of the [prior] offense" only *one* of several factors that must be balanced. *See* U.S.S.G. § 4A1.2(c), Application Note 12. It is also consistent with the statement of the factors in the multi-factor test. The first factor invites "comparison of *punishments* imposed for the listed and unlisted *offenses*," *see id.* (emphasis added), which, again, suggests consideration of the listed offenses *as a group*. The second, fourth, and fifth factors, read in context, plausibly suggest—and certainly do not unambiguously exclude—comparison of the prior

offense to the listed offenses *as a group*. Even to the extent that the guideline and the test can be read to require a comparison of the prior offense to a *specific* listed offense, the multi-factor test does not establish any priority or hierarchy among the listed factors, such that any one of them might be determinative, but requires a balancing of all of the relevant factors. *See Ruacho*, 746 F.3d at 853 (describing the test as a "multi-factor balancing test").

Furthermore, the plain language of the test of "similarity" established by Amendment 709 and Application Note 12 does not make the five listed factors the *exclusive* factors that a court can consider. Rather, they establish "a common sense approach that includes consideration of *relevant* factors *such as*" the five listed factors. *See* U.S.S.G. § 4A1.2(c), Application Note 12 (emphasis added). Thus, a district court may consider *other* "relevant factors," besides those listed, which may include, for example, how the prior offense compares to the listed offenses *as a group*. *See, e.g., United States v. Potes-Castillo*, 638 F.3d 106, 109-10 (stating that, under § 4A1.2(c)(1), "misdemeanor and petty offenses *of the type listed* in section 4A1.2(c)(1) are excluded provided, among other things, that the sentences imposed were not too severe" (emphasis added)). The possibility that other factors could be relevant certainly justifies the determination by the Eleventh Circuit Court of Appeals that "the five-factor test under section 4A1.2(c) requires that we consider the *underlying facts* of [the defendant's] prior conviction." *Garcia-Sandobal*, 703 F.3d at 1284.

### D.      *Application Of The Guideline*

Both the probation officer and the prosecution argue that the apparent lack of any similarity of the elements of Weller's prior offense of contributing to the delinquency of a minor and the elements of any specific listed offense is fatal to his argument that this prior offense does not "count" in the calculation of his criminal history. This argument

is incorrect as a matter of law, in light of Amendment 709 and Application Note 12, which rejected an "elements" test and adopted a multi-factor test. *See Ruacho*, 746 F.3d at 84 (citing *Barrientos*, 670 F.3d at 871). It is also incomplete as an application of the multi-factor test, which does not give any determinative importance to the single factor of "the elements of the [prior] offense." U.S.S.G. § 4A1.2, Application Note 12. It is also wrong as a matter of fact. *See Garcia-Sandobal*, 703 F.3d at 1284.

As to factual error, the probation officer—and, by extension, the prosecution, which adopted the probation officer's argument—suggest that "[i]t does not appear the sentencing order specified which subsection of 709A the defendant pled guilty to." PSIR at ¶ 31 (Probation Officer's Response). The criminal Complaint & Affidavit, filed May 11, 2006, in the Iowa District Court For Woodbury County, specifically charges that Weller "did contribute or knowingly encourage, contribute, or in any manner cause a minor to violate any law of this state or any ordinance of an[y] city" and explains that "the defendant was with two juveniles that were out past there [sic] curfew." Defendant's Sentencing Memorandum, Exhibit C (docket no. 76-3). Thus, Weller's prior offense plainly fell within IOWA CODE § 709A.1(3), which makes it unlawful "[t]o knowingly encourage, contribute, or in any manner cause such child to violate any law of this state, *or any ordinance of any city*." IOWA CODE § 709A.1(3) (emphasis added). The parties have not cited, and I have not found, any state law establishing the curfew in question, so that curfew must have been established by a city ordinance.

Furthermore, "encourag[ing]" and "causing" a child to violate a curfew law, as defined in the Iowa statute prohibiting contributing to the delinquency of a minor, is no more than "aiding and abetting" a child to violate the curfew ordinance. *See State v. Hearn*, 797 N.W.2d 577, 580 (Iowa 2011) ("To sustain a conviction under a theory of aiding and abetting, 'the record must contain substantial evidence the accused assented to or lent countenance and approval to the criminal act by either actively participating or

encouraging it prior to or at the time of its commission.'" (quoting *State v. Ramirez*, 616 N.W.2d 587, 591–92 (Iowa 2000), *overruled on other grounds by State v. Reeves*, 636 N.W.2d 22, 25–26 (Iowa 2001)).  A city ordinance violation is a prior offense that is *never* counted under U.S.S.G. § 4A1.2(c)(2).  The elements of a curfew violation are also, in turn, comparable to the elements of "loitering," another listed offense that is *never* counted, U.S.S.G. § 4A1.2(c)(2), which requires proof of remaining in any one place with an apparent harmful purpose of effect."  *See State v. Showers*, 845 N.W.2d 436, 442-46 (Iowa 2014) (discussing the requirements for a constitutional prohibition on "loitering"); *and compare United States v. Hines*, 628 F.3d 101, 109 (3d Cir. 2010) ("A person loiters, within the meaning of the Guidelines, merely by wandering, prowling, or remaining in a public place.").  Thus, unlike the prior offenses at issue in *Ruacho*, which had no overlapping elements or only slight overlap of elements with the listed offenses identified, 746 F.3d at 854-55, 856, the elements of Weller's prior offense of contributing to the delinquency of a minor *substantially overlap* the elements of at least two "listed" offenses in § 4A1.2(c).  *Compare Leon-Alvarez*, 2008 WL 5429724 at *5 (finding no similarity between the elements of a prior offense of contributing to the delinquency of a minor and listed offenses).

Putting the "elements" factor in its proper context as *one* of the five *listed* factors in the five-factor test, *see* U.S.S.G. § 4A1.2(c), Application Note 12, I find that *all* of those other factors weigh in favor of *not* counting Weller's prior offense.  As to the first two factors—comparison of punishments and perceived seriousness of the offense as indicated by level of punishment, *see* U.S.S.G. § 4A1.2, Application Note 12(A)— contributing to the delinquency of a minor in violation of Iowa Code § 709A.1(3) was a simple misdemeanor that was punishable by a maximum of 30 days in jail or a $500 fine.  *See* Iowa Code § 903.1(1)(a) (2006).  Weller has shown that this is less serious punishment than could have been imposed for several of the "listed" offenses in

§ 4A1.2(c). *See* Defendant's Sentencing Memorandum, 6-7 (tables of simple and serious misdemeanors, as defined by Iowa statutes and ordinances, listed in §§ 4A1.2(c)(1) and (2)). Also, considering the "underlying facts," *see Garcia-Sandobal*, 703 F.3d at 1284, Weller was given no jail time and a fine of $50. Again, Weller has shown that his actual punishment was far less than the punishments that could have been imposed for many of the listed offenses in both § 4A1.2(c)(1) and § 4A1.2(c)(2). *See* Defendant's Sentencing Memorandum, 6-7 (tables of simple and serious misdemeanors, as defined by Iowa statutes and ordinances, listed in §§ 4A1.2(c)(1) and (2)). Thus, these two factors weigh in Weller's favor, and the prosecution did not argue differently in its Response To Defendant's Sentencing Memorandum And Motion For Downward Variance (docket no. 80). *See Ruacho*, 746 F.3d at 854 (finding that these two factors weighed in the defendant's favor, where the prosecution conceded the point); *Leon-Alvarez*, 2008 WL 5429724 at *5 (the mild punishment for the petty offense of contributing to the delinquency of a minor, involving keeping a girl who appeared to be intoxicated out past curfew, weighed against awarding the prior offense a criminal history point).

The remaining two factors are the level of culpability involved and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct (recidivism). *See* U.S.S.G. § 4A1.2, Application Note 12(A); *Ruacho*, 746 F.3d at 855 (considering these factors and describing the latter one as the "recidivism" factor). Unlike the situation in *Ruacho*, there is no prior precedent of the Eighth Circuit Court of Appeals explaining the weight to be given to these factors as they relate to Weller's prior offense. *See* 746 F.3d at 855 (citing *Foote*, 705 F.3d at 308). Nevertheless, it is difficult to describe the offense of contributing to the delinquency of a minor, at least as to encouraging minors to violate a curfew ordinance, as suggesting a "calculating," "resourceful," or "dangerous" criminal, particularly in comparison to the offenses listed in § 4A1.2(c). *Compare id.* at 855 (quoting *Foote*, 705 F.3d at 308); *see also Leon-*

*Alvarez*, 2008 WL 5429724 at *6 (the offense of contributing to the delinquency of a minor by keeping a girl who appeared to be intoxicated out past curfew was not particularly "blameworthy"). With such a prior offense—particularly in the context of the perfectly ordinary misconduct of new high school graduates celebrating graduation past the appointed curfew for some of them—there is not the merest hint of a correlation to recidivism. *Compare id.*; *see also Leon-Alvarez*, 2008 WL 5429724 at *6 (concluding that the "light sentence" actually imposed for contributing to the delinquency of a minor, suggested "a low level of culpability and low predictive capacity for future criminality"). Thus, these two factors also weigh strongly in favor of *not* counting Weller's prior offense in his criminal history calculation.

It might seem reasonable to consider, as an *additional* "relevant factor" under the multi-factor test in § 4A1.2(c), whether I could, as the prosecution suggests, take into account the underlying facts of the offense in an alternative manner, such as finding over-representation of criminal history or granting a variance, to achieve a reasonable sentence. I will not do so, however, because, prior to Senior Judge O'Brien's opinion on remand, the Eighth Circuit Court of Appeals had made clear that it is reversible error for a district court not to make a guidelines criminal history calculation under § 4A1.2(c). *See Leon-Alvarez*, 532 F.3d at 815 (remanding, because the district court's refusal to count a 1993 conviction for contributing to the delinquency of a minor was reversible error, where the district court had considered § 4A1.2(c) "advisory," allowing him to reject counting the offense because it was "akin" to listed offenses, without conducting the *mandatory* guidelines calculation of the defendant's criminal history category).

Balancing all of the relevant factors, as required by § 4A1.2, Application Note 12, I conclude that Weller's prior conviction for contributing to the delinquency of a minor, consisting of encouraging minors to violate a curfew ordinance, should *not* be awarded a criminal history point.

### E. Alternative Reasons For Rejecting The Calculation

In the alternative, even if I did count Weller's prior conviction against him in calculating his criminal history, I would still conclude that a guideline sentence in the range of 151 to 188 months is excessive, in light of the factors in 18 U.S.C. § 3553(a).[5] Specifically, it is simply unnecessary to reflect the seriousness of the charged offense, promote respect for the law, provide just punishment for the charged offense, adequately deter criminal conduct, protect the public from further crimes by Weller, or provide Weller with any needed treatment to impose an additional 16 to 20 months of imprisonment. Indeed, I believe that imposing such additional imprisonment based solely on Weller's prior petty offense would encourage *disrespect* for the law and simply be unjust.[6]

---

[5] In most cases involving guideline interpretation, I would consider whether I would disagree, on policy grounds, with an interpretation of the guidelines and multi-factor test and application of them to Weller's prior conviction for contributing to the delinquency of a minor that would require assessing a criminal history point for such a prior offense. *See Pepper v. United States*, 562 U.S. 476 (2011) (authorizing imposition of non-guideline sentences based on policy disagreements with guidelines). I will not do so here, however, because the parties have not raised the "policy disagreement" issue, and because there may be some question as to whether or not a district court can disagree with a criminal history guideline on policy grounds. *See Leon-Alvarez*, 532 F.3d at 818-819.

[6] Indeed, had Weller been eligible for the "safety valve" pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, but for counting his prior offense for contributing to the delinquency of a minor in his criminal history, the additional term of imprisonment that would have been required by counting his prior conviction would have been even more extreme and unjust.

### III.    CONCLUSION

For these reasons, I declined to count Weller's prior conviction for contributing to the delinquency of a minor in his criminal history calculation, pursuant to U.S.S.G. § 4A1.2(c), and I determined that, as a result, his criminal history category was I, and his advisory sentencing guidelines range was 135 to 168 months.

**IT IS SO ORDERED**.

**DATED** this 5th day of May, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA